**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| WILLIAM WARREN MALPHRUS, JR.,<br>Plaintiff,<br><br>v.<br><br>G SQUARED LOGISTICS, LLC;<br>TYLER PLEASANT; and<br>KINGBEE RENTALS, LLC,<br>Defendants. | Civil Action No. 9:26-cv-4520-RMG<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff William Warren Malphrus, Jr., complaining of the Defendants above named, alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from a motor vehicle collision that occurred on May 9, 2026, on Tarboro Road in Ridgeland, Jasper County, South Carolina. Defendant Tyler Pleasant drove a commercial cargo van out of a private driveway and into the westbound travel lane of Tarboro Road without yielding the right of way to Plaintiff, who was approaching on a motorcycle at the posted speed limit. Plaintiff left the roadway, entered a ditch, and was thrown from his motorcycle. He sustained fractures of seven ribs, a lacerated kidney and adrenal gland, a bicondylar fracture of the right tibial plateau, multiple fractures of both feet and the left hand, a concussion, and hemorrhagic shock. He underwent five surgical procedures and spent thirty-four consecutive days in a hospital and an inpatient rehabilitation facility.

2. The van was owned by Defendant Kingbee Rentals, LLC and, upon information and belief, had been rented by Kingbee to Defendant G Squared Logistics, LLC, a federally registered for-hire motor carrier, in whose service Pleasant was operating it.

## II. PARTIES

3. Plaintiff William Warren Malphrus, Jr. is a citizen and resident of Jasper County, South Carolina, residing at 7048 Tarboro Road, Ridgeland, South Carolina 29936. He was sixty-four years of age on the date of the collision.

4. Defendant Tyler Pleasant is, upon information and belief, a citizen and resident of Effingham County, Georgia, residing at 133 Buckfield Drive, Rincon, Georgia 31326. At all times material he held a Georgia Class C driver's license.

5. Defendant G Squared Logistics, LLC ("G Squared") is a limited liability company organized under the laws of the State of Georgia, with its address of record at 1502 Benton Boulevard, Apartment #11101, Savannah, Georgia 31407. G Squared is registered with the Federal Motor Carrier Safety Administration under USDOT Number 4526008 and Docket Number MC-1793951, and is classified in that registration as an authorized for-hire interstate motor carrier. Upon information and belief, each member of G Squared is a citizen of the State of Georgia, and no member of G Squared is a citizen of the State of South Carolina.

6. Defendant Kingbee Rentals, LLC ("Kingbee") is a limited liability company organized under the laws of the State of Utah, with its principal place of business at 2272 South 5600 West, West Valley City, Utah 84120, and doing business as Kingbee Vans. Kingbee is engaged in the trade or business of renting and leasing commercial cargo vans, without drivers, to commercial customers throughout the United States. Kingbee is registered with the Federal Motor Carrier Safety Administration under USDOT Number 4003374. Upon information and belief, no member of Kingbee is a citizen of the State of South Carolina.

7. Plaintiff has pleaded the identity of the lessee of the subject vehicle and of Pleasant's employer upon information and belief, based on information provided by Pleasant at the scene and produced during the pretrial investigation in response to Plaintiff's claim. If discovery establishes that the vehicle was rented to, or that Pleasant was employed or engaged by, a person or entity other than G Squared, Plaintiff will seek leave to amend to name that person or entity.

## III. JURISDICTION AND VENUE

8. This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiff, a citizen of South Carolina, and each Defendant, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff's verified medical charges alone presently exceed $255,000.

9. The citizenship of a limited liability company is the citizenship of each of its members. The membership of G Squared and of Kingbee is not a matter of public record. Plaintiff has pleaded the citizenship of each Defendant's members upon information and belief, has identified the citizenship attributed to Plaintiff in his contemporaneously filed answers to the interrogatories prescribed by Local Civil Rule 26.01 (D.S.C.), and will supplement those answers promptly upon learning the identity and citizenship of each Defendant's members.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The collision occurred in Jasper County, South Carolina.

11. This action is assignable to the Beaufort Division under Local Civil Rule 3.01(A)(1) (D.S.C.). Jasper County lies within the Beaufort Division. 28 U.S.C. § 121(11).

12. This Court has personal jurisdiction over Pleasant, who committed a tortious act within South Carolina while operating a motor vehicle on a South Carolina public highway.

13. This Court has personal jurisdiction over G Squared. Upon information and belief, G Squared conducts and conducted commercial motor vehicle operations within South Carolina, dispatched or permitted its drivers to operate within South Carolina, derived revenue from transportation performed within South Carolina, and the claims asserted against it arise directly out of those South Carolina activities. G Squared's federal registration reports all of its drivers as operating in interstate commerce within a one-hundred-mile radius of a base in Savannah, Georgia, a radius that encompasses Jasper County, South Carolina.

14. This Court has personal jurisdiction over Kingbee. Upon information and belief, Kingbee rents and leases vehicles to commercial customers who operate those vehicles within South Carolina, delivers vehicles to or for use in South Carolina, derives revenue from the use of its vehicles within South Carolina, and placed the subject vehicle into the stream of commerce with the expectation that it would be operated on public highways in South Carolina and surrounding states. The claims asserted against Kingbee arise out of and relate to the operation of Kingbee's own vehicle on a South Carolina public highway.

15. This action is timely. South Carolina prescribes a three-year limitations period for actions for personal injury. S.C. Code Ann. § 15-3-530(5).

## IV. FACTUAL ALLEGATIONS

16. On May 9, 2026, at approximately 2:00 p.m., Plaintiff was operating a 2001 Harley-Davidson motorcycle, VIN 1HD1GEV171Y311196, bearing South Carolina registration ZF17936, westbound on Secondary Route 22, known as Tarboro Road, in Ridgeland, Jasper County, South Carolina.

17. Tarboro Road at the location of the collision is a two-way, undivided, level, straight public highway with no traffic controls and a posted speed limit of forty-five miles per hour. The collision occurred approximately 0.12 miles south of Nimmer Turf Road, at a location that is not an intersection.

18. It was daylight. It was raining and the road surface was wet.

19. Plaintiff was traveling at approximately forty-five miles per hour, within the posted speed limit, proceeding essentially straight ahead in his lane of travel.

20. At the same time, Pleasant was operating a 2026 RAM ProMaster 2500 cargo van, VIN 3C6LRVDG5TE157582, bearing Utah registration Z011941 (the "Van").

21. Pleasant drove the Van out of a private driveway on the north side of Tarboro Road and entered the westbound travel lane in which Plaintiff was approaching, at a speed of approximately ten miles per hour.

22. Pleasant failed to yield the right of way to Plaintiff, who was then approaching on the roadway that Pleasant was entering.

23. Pleasant caused the collision by, among other things, failing to yield the right of way while attempting to enter a traffic lane. Plaintiff did not contribute to the collision, was not distracted, took no contributing action. No other vehicle was involved in the collision.

24. As a direct and proximate result of Pleasant's entry into Plaintiff's lane of travel, the Van struck the left side of Plaintiff's motorcycle.

25. Alternatively, and without waiver of the allegations of the preceding paragraph: if the Van and Plaintiff's motorcycle did not make physical contact, then Pleasant's entry into Plaintiff's lane of travel created a sudden emergency and an imminent hazard of collision that required Plaintiff to take evasive action, and Plaintiff's resulting departure from the roadway was the natural and probable consequence of Pleasant's negligence and a harm of which Pleasant's negligence was a substantial contributing cause. Physical contact between the vehicles is not an element of Plaintiff's claim.

26. Plaintiff was caused to run off the right side of the roadway, to enter a ditch, and to be thrown entirely from his motorcycle onto the ground.

27. Plaintiff struck the ground with such force that he sustained a large laceration of the right forehead, a large right scalp hematoma, a concussion, fractures of the second through eighth right ribs, a right pneumothorax and hemothorax, a grade 2 laceration of the right kidney, a laceration and hematoma of the right adrenal gland, and hemorrhagic shock, as well as other orthopedic and neurological injuries.

28. At all times material, Kingbee was the registered owner of the Van.

29. Kingbee is in the business of renting and leasing pre-upfitted commercial cargo vans to commercial customers. Kingbee rents its vehicles without drivers. Kingbee's published terms require a minimum initial rental commitment of four months.

30. Kingbee markets its vehicles as "work-ready," and holds itself out as preparing, upfitting, and delivering vehicles fit for immediate commercial service.

31. Upon information and belief, Kingbee rented the Van to G Squared under a written rental or lease agreement that was in force on May 9, 2026.

32. Upon information and belief, Kingbee retained under that agreement, by its own course of dealing, or both, responsibility for some or all of the inspection, servicing, maintenance, and mechanical condition of the Van during the rental term.

33. Upon information and belief, Kingbee installed and maintained telematics or global positioning equipment on the Van and received and retained data generated by that equipment, including data concerning the Van's operation on May 9, 2026.

34. Upon information and belief, Kingbee administers its rentals through a mobile application through which renters reserve vehicles, upload certificates of insurance, submit images of driver's licenses, and complete timestamped vehicle inspections at pickup and return, and Kingbee retains those records.

35. At the time of the collision, the Van was being operated in furtherance of a commercial enterprise and not for any personal purpose of Pleasant.

36. Upon information and belief, Pleasant was at the time of the collision an employee of G Squared, acting within the course and scope of his employment and in furtherance of G Squared's business.

37. Alternatively, and without waiver of the allegations of the preceding paragraph, Pleasant was at the time of the collision the agent or servant of G Squared, acting within the scope of his agency and subject to G Squared's right of control; or, in the further alternative, Pleasant was an independent contractor selected and engaged by G Squared to perform the driving work he was performing at the time of the collision.

38. G Squared holds operating authority from the Federal Motor Carrier Safety Administration as an authorized for-hire interstate motor carrier. In the Motor Carrier Identification Report it filed on April 6, 2026 (the report in force on the date of the collision), G Squared reported twenty drivers, zero power units acquired by ownership, term lease, or trip lease, and one mile of reported vehicle travel for the preceding year.

39. Upon information and belief, G Squared operated its business using vehicles it rented from others, including the Van.

40. G Squared owed a duty to the motoring public, including Plaintiff, to exercise reasonable care in selecting, hiring, qualifying, training, instructing, supervising, and retaining the drivers it placed behind the wheel of commercial vehicles on public highways, and in entrusting such vehicles to them.

41. Upon information and belief, G Squared failed to obtain or to evaluate Pleasant's driving history before placing him in the Van; failed to train or instruct him in the safe operation of a high-roof cargo van, a vehicle with materially greater mass, length, and blind-spot area than a passenger car; failed to train or instruct him in the duty to yield when entering a roadway from a private driveway; failed to supervise or monitor his driving; and failed to adopt or enforce any adequate driver qualification, training, or safety program.

42. Plaintiff is presently without knowledge whether Kingbee and G Squared are affiliates, are under common ownership, management, or control, or share any identity of interest. Plaintiff has served discovery directed to that question and will seek leave to amend if discovery establishes such a relationship.

43. Plaintiff was admitted to Memorial University Medical Center on May 9, 2026. He underwent bedside reduction of a fracture-dislocation of the proximal right tibia and repair of his forehead laceration on the day of the collision.

44. On May 10, 2026, Plaintiff underwent application of an external fixator to the right lower extremity. He became hypotensive during the procedure and required emergent placement of a right chest tube, placement of a central line, and bronchoscopy. He remained intubated and was transferred to the trauma intensive care unit in hemorrhagic shock.

45. Plaintiff remained mechanically ventilated for four days. He was weaned from vasopressors and extubated on May 13, 2026. He thereafter developed fevers, hypoxia, and pneumonia requiring intravenous antibiotics. His chest tube was removed on May 17, 2026.

46. On May 18, 2026, Plaintiff underwent open reduction and internal fixation of the right bicondylar tibial plateau fracture, knee arthrotomy with partial lateral meniscectomy, removal of the external fixator, and closed reduction of a fracture-dislocation of the left great toe.

47. On May 21, 2026, Plaintiff underwent closed reduction and percutaneous pinning of the bases of the left first and second metacarpals and excisional debridement of a webspace wound. On May 22, 2026, he underwent surgical preparation of the left dorsal hand wound and tissue lysis of the left index finger and thumb with adjacent tissue transfer.

48. Plaintiff was discharged from Memorial University Medical Center on May 28, 2026, after nineteen days, directly to inpatient rehabilitation at Encompass Health Savannah, where he remained for an additional fifteen days until June 11, 2026. He was institutionalized for thirty-four consecutive days and underwent five surgical procedures.

49. Plaintiff's diagnosed injuries include, without limitation: fractures of the right second through eighth ribs; right pneumothorax and hemothorax; grade 2 laceration of the right kidney; laceration and hematoma of the right adrenal gland; post-traumatic respiratory failure; hemorrhagic shock; closed bicondylar fracture of the right tibial plateau; fracture-dislocation of the right tibia and fibula; acute tear of the right lateral meniscus; fractures of the right first and second toes; fracture-dislocation of the interphalangeal joint of the left great toe; fractures of the bases of the left first and second metacarpals; nondisplaced fracture of the left trapezium; laceration of the left hand involving the extensor tendon; large right forehead laceration; large right scalp hematoma; concussion; oropharyngeal dysphagia; and extensive abrasion injuries to the right upper extremity, both hands, and both knees.

50. Before the collision Plaintiff was fully independent and employed. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue to suffer past and future medical and rehabilitative expenses; past and future lost earnings and impairment of earning capacity; permanent physical impairment and disfigurement; past and future physical pain and suffering; mental anguish and emotional distress; loss of enjoyment of life; and the loss of his pre-collision independence and quality of life.

## COUNT I

## NEGLIGENCE
**(Against Defendant Tyler Pleasant)**

51. Plaintiff incorporates each preceding paragraph as though fully set forth herein.

52. Pleasant owed Plaintiff a duty to exercise reasonable care in the operation of the Van upon the public highways of South Carolina, including the duty to keep a proper lookout, to maintain proper control, to yield the right of way when entering a roadway from a private driveway, to observe approaching traffic before entering a travel lane, to avoid creating a hazard to approaching traffic, and to operate with due regard for the rainy weather and wet road surface then prevailing.

53. Pleasant breached that duty by, among other things:

(a) failing to yield the right of way to Plaintiff, who was approaching on the roadway Pleasant was entering;

(b) entering a travel lane when it was not safe to do so;

(c) failing to keep a proper lookout for approaching traffic before leaving the private driveway;

(d) failing to see what was there to be seen;

(e) creating a sudden and imminent hazard of collision in Plaintiff's lane of travel;

(f) failing to operate the Van with due regard for the rain, the wet road surface, and the forty-five mile per hour speed of approaching traffic; and

(g) failing to operate the Van as a reasonably prudent driver would have under the same or similar circumstances.

54. As a direct and proximate result of Pleasant's negligence, Plaintiff sustained the injuries and damages described above.

**COUNT II**

**NEGLIGENCE PER SE FOR VIOLATION OF S.C. CODE ANN. § 56-5-2350**
**(Against Defendant Tyler Pleasant)**

55. Plaintiff incorporates each preceding paragraph as though fully set forth herein.

56. S.C. Code Ann. § 56-5-2350 states in pertinent part, *"The driver of a vehicle about to enter or cross a roadway from any place other than another roadway shall yield the right-of-way to all vehicles approaching on the roadway to be entered or crossed."*

57. Pleasant was the driver of a vehicle about to enter and cross a roadway, Tarboro Road, from a place other than another roadway, namely a private driveway.

58. Plaintiff was operating a vehicle approaching on the roadway to be entered and crossed.

59. Pleasant failed to yield the right of way to Plaintiff and thereby violated S.C. Code Ann. § 56-5-2350.

60. The statute was enacted for the protection of the motoring public, and Plaintiff is a member of the class of persons the statute was designed to protect. The harm Plaintiff suffered, an injury arising from a collision or forced evasion caused by a vehicle entering a roadway without yielding, is precisely the harm the statute was designed to prevent.

61. Pleasant's violation of S.C. Code Ann. § 56-5-2350 constitutes negligence per se and was a direct and proximate cause of Plaintiff's injuries and damages.

**COUNT III**

**VICARIOUS LIABILITY — RESPONDEAT SUPERIOR**
**(Against Defendant G Squared Logistics, LLC)**

62. Plaintiff incorporates each preceding paragraph as though fully set forth herein.

63. At the time of the collision, Pleasant was the employee, servant, or agent of G Squared, was acting within the course and scope of that employment or agency, and was operating the Van in furtherance of G Squared's business and subject to G Squared's right of control.

64. G Squared is therefore liable for the negligence and the statutory violation of Pleasant described in Counts I and II as though it had committed those acts itself.

65. As a direct and proximate result, Plaintiff sustained the injuries and damages described above.

**COUNT IV**

**NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION, AND ENTRUSTMENT**
**(Against Defendant G Squared Logistics, LLC)**

66. Plaintiff incorporates each preceding paragraph as though fully set forth herein.

67. G Squared owed Plaintiff and the motoring public an independent duty to exercise reasonable care in selecting, hiring, qualifying, training, instructing, supervising, monitoring, and retaining the drivers it placed in commercial vehicles on the public highways, and in entrusting such vehicles to them. That duty is owed by G Squared in its own right and does not depend on the negligence of any driver.

68. G Squared breached that duty by, among other things:

(a) failing to obtain, review, or evaluate Pleasant's driving record and history before entrusting the Van to him;

(b) failing to verify that Pleasant was competent and qualified to operate a high-roof commercial cargo van on public highways;

(c) failing to train or instruct Pleasant in the safe operation of a vehicle of the Van's size, mass, and sight-line limitations;

(d) failing to train or instruct Pleasant in the duty to yield the right of way when entering a roadway from a private driveway;

(e) failing to adopt, implement, or enforce any adequate driver qualification, training, road-testing, or safety program;

(f) failing to supervise or monitor Pleasant's driving performance; and

(g) entrusting the Van to a driver whom G Squared knew or in the exercise of reasonable care should have known was not competent or qualified to operate it safely.

69. As a direct and proximate result of G Squared's own negligence, Plaintiff sustained the injuries and damages described above.

**COUNT V**

**NEGLIGENT SELECTION OF AN INDEPENDENT CONTRACTOR**
**(Against Defendant G Squared Logistics, LLC Pleaded in the Alternative)**

70. Plaintiff incorporates each preceding paragraph as though fully set forth herein. This Count is pleaded in the alternative to Count III, and without waiver of it, in the event Pleasant is determined not to have been G Squared's employee, servant, or agent.

71. South Carolina recognizes that a principal in an independent contractor relationship may be subject to liability for physical harm proximately caused by the principal's own negligence in selecting the independent contractor.

72. If Pleasant was an independent contractor rather than an employee or agent, then G Squared was the principal who selected and engaged him to perform the driving work he was performing at the time of the collision.

73. The operation of a commercial cargo van on public highways, among motorcycles and other vulnerable road users, is work that involves a risk of physical harm to others unless it is skillfully and carefully done.

74. G Squared failed to exercise reasonable care to engage a competent and careful contractor, measured against the difficulty and danger of that work. Upon information and belief, G Squared conducted no meaningful inquiry into Pleasant's competence, driving history, training, or fitness before engaging him.

75. G Squared's negligence in selecting Pleasant was a direct and proximate cause of Plaintiff's injuries and damages.

## COUNT VI

## NEGLIGENT MAINTENANCE AND INSPECTION
**(Against Defendant Kingbee Rentals, LLC)**

76. Plaintiff incorporates each preceding paragraph as though fully set forth herein.

77. Kingbee holds itself out as supplying "work-ready" commercial vehicles that it has itself prepared, upfitted, inspected, and delivered fit for immediate commercial service on the public highways.

78. Upon information and belief, Kingbee undertook, by the terms of its rental or lease agreement, responsibility for the inspection, servicing, maintenance, and mechanical condition of the Van during the rental term.

79. Having so undertaken, Kingbee owed a duty to exercise reasonable care in the inspection, servicing, maintenance, and repair of the Van, and in supplying it for commercial operation on public highways in a condition reasonably safe for that use. That duty ran to foreseeable users of the highways on which the Van would be operated, including Plaintiff.

80. Upon information and belief, Kingbee breached that duty by, among other things, failing to inspect the Van adequately before and during the rental term; failing to perform required or recommended servicing and maintenance; failing to discover, disclose, or repair defects affecting the Van's brakes, tires, steering, mirrors, visibility, or other safety-related systems; and supplying and continuing to supply the Van for commercial highway operation in a condition that was not reasonably safe.

81. Upon information and belief, Kingbee's breach of that duty was a direct and proximate cause, or a substantial contributing cause, of the collision and of Plaintiff's injuries and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff William Warren Malphrus, Jr. prays for judgment against Defendants, and each of them, as follows:

(a) For actual and compensatory damages in an amount to be determined by the jury, including past and future medical and rehabilitative expenses, past and future lost earnings and impairment of earning capacity, permanent physical impairment and disfigurement, past and future physical pain and suffering, mental anguish and emotional distress, and loss of enjoyment of life;

(b) For prejudgment and post-judgment interest as allowed by law;

(c) For the costs and disbursements of this action; and

(d) For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*s/ James G. Biggart II*
James G. Biggart II, Esq.
Fed. ID No. 145895
MORGAN & MORGAN
4401 Belle Oaks Drive, Suite 300
North Charleston, South Carolina 29405
Telephone: (843) 973-5186
Email: biggartlitigation@forthepeople.com
Attorney for Plaintiff

October 8, 2026
Charleston, South Carolina